# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH B. BURKLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-1014 |
| ) | Judge Nora Barry Fischer |
| MUNICIPAL AUTHORITY OF ) | |
| WESTMORELAND COUNTY, ) | |
| COMMISSIONER CHARLES ANDERSON, ) | |
| *individually*, COMMISSIONER R. TYLER ) | |
| COURTNEY, *individually*, AND MAWC ) | |
| BOARD MEMBERS A. KEITH STASO, ) | |
| RANDY ROADMAN, JEROME DEFABO, ) | |
| SR., BRUCE ROBINSON, AND ANTHONY ) | |
| BOMPIANI, *all individually*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

**I.     INTRODUCTION**

Plaintiff Kenneth B. Burkley brings this § 1983 action, claiming that his rights under the First and Fourteenth Amendments to the United States Constitution were violated when he was terminated from his position as Solicitor of the Municipal Authority of Westmoreland County ("MAWC" or "the Authority") (Docket No. 9). He names as Defendants the MAWC, along with individual Defendants: Commissioner Charles Anderson, Commissioner R. Tyler Courtney, and MAWC Board Members: A. Keith Staso, Randy Roadman, Jerome DeFabo, Sr., Bruce Robinson, and Anthony Bompiani. (*Id.*).

Plaintiff first filed a complaint on July 16, 2013. (Docket No. 1). Following the Defendants' motion to dismiss said complaint, (Docket No. 6), Plaintiff filed an Amended Complaint on October 4, 2013, which incorporates most of the allegations set forth in his initial

1

complaint, modifying one paragraph, (Docket No. 9). The Amended Complaint brings one claim, charging that the Defendants infringed his First Amendment right to free association, guaranteed through the Fourteenth Amendment. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 9, ¶¶ 29, 31); *See* U.S. CONST. amends. I, XIV. Plaintiff requests compensatory and punitive damages as well as various equitable relief, including reinstatement to the Solicitor position. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 9–10, ¶ 32). Defendants moved to dismiss the Amended Complaint on the grounds that it fails to state a claim. (Docket No. 10); FED. R. CIV. PRO. 12(b)(6). The matter having been fully briefed (Docket Nos. 11; 12; 13; 16) is now ripe for review.

## II. FACTUAL BACKGROUND

### A. The Parties

Plaintiff Kenneth Burkley is an individual residing in Greensburg, Pennsylvania. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 1, ¶ 2). He is an attorney who has practiced law in Pennsylvania for over thirty-eight years. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 5, ¶ 13). Plaintiff worked as Solicitor[1] for the Authority beginning in January 2002, continuing in this position until he was fired on January 16, 2013. (*Id.*). Plaintiff further states that he has been an active member of the Democratic Party in Westmoreland County for many years. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 5, ¶ 15). Plaintiff's political activities included running for the United States Congress as a Democratic candidate in 1990 and 1992, as well as serving as the party's Chairman in Westmoreland County from 1998 until 2002. (*Id.*). Additionally, Plaintiff notes that he often acts as a spokesperson for the Democratic Party, including being quoted in local newspapers, and that he supported Democratic candidates in the most recent election for County Commissioner. (*Id.*).

---

[1] The term "Solicitor" is defined as :The chief law officer of a governmental body or a municipality." *Solicitor*, BLACK'S LAW DICTIONARY (9th ed. 2009).

2

Defendant MAWC is a government entity established pursuant to the Pennsylvania Municipality Authorities Act. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 2, ¶ 3); 53 PA. CONS. STAT. § 5601 *et seq.*[2] The Authority provides sewage and water services to customers in Westmoreland County.[3] (Docket No. 9 at 2, ¶ 2(B)). The individual Defendants include the two County Commissioners and the five Members of the MAWC Board. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 2–4, ¶¶ 5–11). County Commissioners are elected to their positions and have hiring and firing authority over employees and appointed individuals in Westmoreland County. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 2, ¶¶ 4–6). The Commissioners also appoint the five Board Members of the Authority. (*Id.*). *See also* 53 PA. CONS. STAT. § 5610(a)(1). Board Members share with the Commissioners voting authority to hire or fire appointed individuals at the MAWC. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 2, ¶ 4).

B. **The Position of Solicitor to the MAWC**

As stated above, Plaintiff was terminated from the position of Solicitor in January 2013. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 5, ¶ 13). Plaintiff asserts that as Solicitor, he "provided quality legal services to the MAWC Board members," earning an annual salary of $120,000. (Docket No. 9 at 1–2, ¶¶ 1, 2(A); Docket No. 1 at 9, ¶ 32(a)). The only other information about the actual substantive duties of Solicitor contained in the Amended Complaint provides that the Solicitor "position calls for legal opinions and legal assistance in bond issues and other water authority related legal matters." (Docket No. 9 at 1, ¶ 2).

Beyond these general averments about the MAWC and the Solicitor position, the Amended Complaint adds multiple allegations related to whether political affiliation is relevant

---

[2] The Court takes judicial notice of this Act. FED. R. EVID. 201(b).
[3] According to its website, the MAWC is "committed to providing our consumers with a safe, reliable, and affordable supply of high-quality drinking water." http://www.mawc.org/

to the Solicitor's duties or whether the Solicitor's role impacts policy. (*Id.* at 1–3). For example, Plaintiff avers that the Solicitor "is not a policy maker," that the job duties "do not require an attorney from any particular political party or political affiliation," and that "[p]olitics plays no role in the daily operations and policies of the MAWC." (*Id.* at 1–2, ¶ 14(C), (D)). Consistent with this characterization, Plaintiff alleges that during his time in the office, political persuasion was essentially irrelevant. (*Id.* at 2). To that end, Plaintiff alleges that he provided service "free of any political influence," he "communicated with [Board members] without regard to any particular political affiliation, he "did not make policy . . . nor did he provide legal advice on MAWC policy matters," and his political affiliation "did not interfere with or impede his work." (*Id.* at 2, ¶ 14(A), (F), (G), (H)).

C. **Facts Surrounding Plaintiff's Termination as MAWC Solicitor**

Plaintiff's claim centers on his termination from the MAWC Solicitor position in January 2013. (*Id.*; Docket No. 1). In 2011, Defendants Anderson and Courtney, both Republicans, were elected to the Board of County Commissioners, creating a Republican majority. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 5–6, ¶ 16). Plaintiff contends that around this time, Defendants Anderson and Courtney "told several people that one of their goals was to 'get rid of the three B's,'" referring to three officials, including Plaintiff Burkley.[4] (*Id.*). To this end, Plaintiff alleges Defendants Anderson and Courtney "conspired with Defendant members of the MAWC board to ultimately fire [him]." (*Id.*).

On January 10, 2013, the MAWC held its annual reorganization board meeting. (Docket

---

[4] Plaintiff notes that one of the other officials referred to in the group of "the three B's" is former Chief Public Defender Dante Bertani, who currently has a civil action pending in this court. (Docket No. 1 at 5, ¶ 16). That case is styled *Bertani v. Westmoreland County, et al.*, Civ. No. 2:12-cv-1359 (W.D. Pa.) (Cercone, J.).

No. 9 at 1, ¶ 1; Docket No. 1 at 6, ¶ 17). At this meeting, Defendant Roadman was elected Chairman of the Authority. (*Id.*). Additionally, the County Commissioners—Defendants Anderson and Courtney—elected Defendant Robinson to the Board of Directors, thereby creating a 3–2 Republican majority on the five-person board. (*Id.*). Plaintiff alleges that at this same meeting, and at the direction of Defendants Anderson and Courtney, Defendant Roadman instructed MAWC resident manager C.H. Kerr to schedule interviews for the position of Solicitor to the Authority, giving Mr. Kerr the names of four (4) candidates whom Defendants Anderson and Courtney had approved for the position—all of whom were attorneys that were registered Republicans. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 6, ¶ 18). Additionally, Defendant Roadman directed Mr. Kerr to schedule a special meeting of the board of directors for the Authority on January 16, 2013. (*Id.*). Defendant Roadman informed Mr. Kerr that no other potential candidate should be given an interview unless invited by a board member. (*Id.*).

On January 16, 2013, Plaintiff was terminated from his position as Solicitor. (Docket No. 9 at 1, ¶ 1; Docket No. 1 at 7, ¶ 22). The five members of the Authority's Board voted unanimously for said termination, and appointed Attorney Scott Avolio as the new Solicitor. (*Id.*). Mr. Avolio was, at the time, the vice chairman of the Westmoreland County Republican Committee. (*Id.*).

### III. LEGAL STANDARD

Defendants move to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Docket No. 10). Rule 12(b)(6) empowers a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible if it alleges sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

In addition to pleading adequate factual content, the complaint also must be legally sufficient. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. To determine the complaint's legal sufficiency, the court must accept as true all of the facts, but not the legal conclusions, alleged, draw all reasonable inferences in the plaintiff's favor, and confirm that the accepted-as-true facts actually give rise to a claim that would entitle the plaintiff to relief. *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*). This requirement is designed to facilitate the federal notice-pleading standard, which requires "a short and plain statement of [a] claim *showing* that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) (emphasis added).

When ruling on a Rule 12(b)(6) motion, a court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. *See Iqbal*, 556 U.S. at 678. A court need not credit bald assertions, unwarranted inference, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The plaintiff's obligation to provide the grounds of his legal entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original). By authorizing dismissal on the basis of some dispositive issue of law, Rule 12(b)(6) dispenses with "needless discovery and factfinding" for the ultimate purpose of streamlining litigation. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

A court may not dismiss the complaint merely because it appears that the plaintiff cannot prove the facts alleged or will not ultimately prevail on the merits. *Twombly*, 550 U.S. at 556, 563 n.8. Instead, it must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the pertinent cause of action. *Id.* at 556. A motion to dismiss should not be granted if the plaintiff alleges facts which could, if established at trial, entitle him to relief. *Id.* at 563 n.8. In ruling on such motion, a court may consider the complaint, attached exhibits, matters of public record, and undisputedly authentic documents not attached to the complaint if the complainant's claims are based on those documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. DISCUSSION

### A. Political Patronage Dismissals

Title 42 United States Code, Secion 1983 states, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by the United States Constitution and federal statutes that it describes. *Rehberg v. Paulk*, 132 S. Ct. 1497, 1501–02 (2012). One such constitutionally protected right is the First

7

Amendment right to freedom of association. *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984). Citizens have the freedom to associate for the purpose of engaging in free speech, assembly, petition for the redress of grievances, and the exercise of religion. *Id*. at 618.

Freedom of association is potentially infringed through political patronage dismissals—a practice wherein "a newly elected official fires employees under his control merely because of their political beliefs or associations."[5] "Political patronage is one of the oldest traditions in American politics, tracing its roots at the national level as far back as the presidencies of Thomas Jefferson and Andrew Jackson." 2 *Smolla & Nimmer on Freedom of Speech* § 16:4 (2013).

In a trilogy of cases, the Supreme Court laid out principles for deciding political patronage discrimination cases, *i.e.*, cases involving claims of discrimination based on political association. *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013) (citing *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990)); *see also Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270–71 (3d Cir. 2007) (citing same). In these cases, the Supreme Court determined that generally, political patronage dismissals violate the First Amendment. *Elrod*, 427 U.S. at 360; *Branti*, 445 U.S. at 515. However, an exception applies in certain situations wherein the government demonstrates an "overriding interest of vital importance, requiring that a person's private beliefs conform to those of the hiring authority." *Branti*, 445 U.S. at 515–16 (citations omitted). In determining whether this exception applies, "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518.

---

[5] Christopher V. Fenlon, Note, *The Spoils System in Check? Public Employees' Right to Political Affiliation & the Balkanized Policymaking Exception to § 1983 Liability for Wrongful Termination*, 30 CARDOZO L. REV. 2295, 2296 n.6 (2009).

Building upon these precedents, the Court of Appeals for the Third Circuit derived a three-part test to establish a claim of discrimination based on political patronage in violation of the First Amendment. *Galli*, 490 F.3d at 271. To make out a *prima facie* case, Plaintiff must show: (1) that he was employed at a public agency in a position that does not require political affiliation; (2) that he was engaged in constitutionally protected conduct; and (3) that this conduct was a substantial or motivating factor in the government's employment decision. *Id.* If Plaintiff succeeds in making this showing, Defendants may avoid liability "by proving by a preponderance of the evidence that the same employment action would have been taken in the absence of the protected activity." *Id.* at 271 (quoting *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997)).

**B.     The Parties' Arguments**

In the present case, the parties dispute whether the first element of *Galli*'s test has been met. Defendants argue that Plaintiff's Amended Complaint should be dismissed as a matter of law because the Solicitor position fits within the exception laid out in *Elrod* and *Branti*. (Docket No. 11 at 1). Specifically, Defendants assert that Plaintiff was "employed in a high-level advisory position, providing legal advice, counseling, and guidance to MAWC, and under well-settled Third Circuit jurisprudence, his political affiliation was an appropriate requirement for effective performance of his job." (*Id.*). Defendants point out that under Third Circuit case law, the court's inquiry is focused on the function of the office, rather than what actual duties the employee performed. (*Id.* at 2). On this note, Defendants make much of the Plaintiff's office, which they refer to as "chief legal advisor," (*id.* at 2–3), arguing that this position renders political affiliation an appropriate consideration as a matter of law. (*Id.* at 2). Defendants also point out that Plaintiff's allegations that he did not make policy and that political affiliation

9

played no part in performing his duties as Solicitor have no bearing on the ultimate question of whether political affiliation is an appropriate requirement. (*Id.* at 5–9; Docket No. 13 at 1–3). Defendants rely heavily on a line of Third Circuit cases, including *Ness v. Marshall*, 660 F.2d 517 (3d Cir. 1981), *Mammou v. Ranck*, 687 F.2d 9 (3d Cir. 1982), and *Wetzel v. Tucker*, 139 F.3d 380 (3d Cir. 1998). (Docket No. 11 at 5–8). From these cases, Defendants draw several points: the court's inquiry must be forward-looking, should focus on whether the Solicitor may have meaningful input into the scope and nature of the government's program, and is inherently fact-specific. (*Id.* at 5–6). Additionally, Defendants emphasize the Third Circuit's note in *Wetzel* that the Rules of Professional Conduct require lawyers to advise clients of potential political ramifications of potential courses of action. (*Id.* at 7); *Wetzel*, 139 F.3d at 386 n.4.

Applying this legal framework, Defendants contend, requires that Plaintiff's Amended Complaint be dismissed. (Docket No. 11 at 9). Defendants assert that the Solicitor to the Authority holds a high-level position which requires the occupant to "provide advice to the Authority on the legality of decisions and actions." (*Id.* at 8). Moreover, this fact-specific inquiry can be resolved as a matter of law because *Wetzel* "is directly analogous to this matter." (*Id.*). Thus, the Solicitor acts as an advisor, and falls squarely within the *Elrod*/*Branti* exception. (*Id.* (citing *Branti*, 445 U.S. at 518; *Elrod*, 427 U.S. at 368)). Finally, Defendants argue briefly that the Amended Complaint should be dismissed because it relies too heavily on conclusory statements. (Docket No. 13 at 4). Defendants characterize Plaintiff's averments as amounting to mere threadbare recitations of the elements, arguing that such statements fail to meet the pleading standards under Federal Rule of Civil Procedure 8(b). (*Id.*). Given these pleading deficiencies and the outcome required by Third Circuit case law, Defendants conclude that "no amount of copious discovery" could change the result that Plaintiff has no plausible claim for

relief, and so Defendants' Motion to Dismiss should be granted. (*Id.*).

Plaintiff argues in response that dismissal is inappropriate at this stage of the litigation. (Docket No. 12 at 8–9). Initially, with respect to the applicable legal framework, Plaintiff contends that the analysis is inherently more fact-specific than Defendants would have, and the case should not be decided as a matter of law. (*Id.* at 7). On this point, Plaintiff observes that the cases upon which Defendants rely—*Wetzel*, *Ness*, and *Mammou*—were all decided at the summary judgment stage. (*Id.*). Plaintiff further attempts to distinguish his case from *Wetzel*, asserting that he was fired solely because of his political affiliation, and not because of his job performance. (*Id.* at 8). Moreover, Plaintiff contends that *Wetzel* does not stand for the rule that solicitors fall within the *Elrod*/*Branti* exception as a matter of law. (*Id.* at 7). Rather, the Third Circuit's ruling was based on the facts discovered in that case. (*Id.*). Given the list of factors that are potentially relevant to this analysis, Plaintiff asserts that the case should proceed through discovery. (*Id.* at 12).

Plaintiff also takes issue with Defendants' arguments that draw on the facts they purport to be alleged in Plaintiff's Amended Complaint. (*Id.* at 7). Plaintiff accuses Defendants of "attempt[ing] by argument to infuse facts into this litigation that are not contained" within the Amended Complaint. (*Id.*). Specifically, Plaintiff avers that he, as Solicitor, was not employed in a high-level advisory position and he did not influence policy. (*Id.*). Plaintiff also makes much of his allegations that his job performance played no role in the decision to fire him, and that this decision was predicated simply on his political activities. (*Id.* at 8; Docket No. 16 at 2).

Plaintiff concludes that his Amended Complaint should not be dismissed because it contains sufficient allegations to make out a claim under the test set forth in *Galli*. (Docket No. 12 at 8–11). Particularly, the first element of *Galli* is satisfied by Plaintiff's allegation that the

position of Solicitor "did not require any particular political affiliation." (*Id.* at 9).

C. **Analysis**

The main question before the Court is whether the position of Solicitor to the MAWC falls under the *Elrod/Branti* exception as a matter of law. In this Court's estimation, such a rule would contradict *Branti*, which is the very decision that announced the "appropriate requirement" test. In *Branti*, the Supreme Court held that the First and Fourteenth Amendments prohibit the discharge of an assistant public defender because of his political beliefs. *Id.* at 518. In so holding, the Supreme Court emphasized that the duties of an assistant public defender were analogous to those performed by a private defense attorney, thereby rendering his or her political affiliation irrelevant. *Id.* at 519 (observing that "whatever policymaking occurs in the public defender's office must relate to the needs of individual clients and not to any partisan political interests"). The reasoning employed in *Branti* precludes a categorical rule holding that all government attorneys involved in "policymaking" must necessarily be regarded as employees whose political affiliation can constitutionally be used to determine his or her fitness for service. *Id.* at 518 (explaining that "party affiliation is not necessarily relevant to every policymaking or confidential position"). In determining whether party affiliation is an "appropriate" consideration, a court must consider *both* the employee's job duties *and* the purpose served by the employing governmental entity. *Id.* at 519.

The Court agrees with Defendants that *Wetzel v. Tucker* provides valuable guidance for analyzing this case. 139 F.3d 380 (3d Cir. 1998). In determining whether the municipal authority's solicitor could be discharged because of his political affiliation in that case, the Court of Appeals for the Third Circuit looked to the Municipal Authorities Act of 1945, which vested broad discretion in the authority to promote "its business and the general welfare." *Id.* at 384.

The General Assembly enacted a revised Municipal Authorities Act in 2001. 53 PA. CONS. STAT. § 5601 *et seq*. The Court notes that under the revised Act, an authority's powers can either be broad or limited, depending upon the content of the given authority's articles of incorporation. § 5605(a)(3) (permitting an authority to amend its articles "[t]o change, add to or diminish its powers or to set forth different or additional powers or purposes"). The Amended Complaint provides only that "[t]he MAWC is a public agency that provides sewage and water services to customers in Westmoreland County and other nearby communities." (Docket No. 9 at 2, ¶ 2(B)). At this stage of the pleadings, the Court lacks information as to whether the Municipal Authority of Westmoreland County exercises broad or narrow powers. Plaintiff alleges that the Authority "provides sewage and water services to customers in Westmoreland County." (Docket No. 9 at ¶ 2(B)). Although the Defendants generally refer to the Authority's possible prerogatives under the statute, they do not discuss the specific purpose of *this particular authority*. (Docket No. 11 at 8).

While the tenor of *Wetzel* provides support for the Defendants' position, the Court disagrees with Defendants' contention that *Wetzel*, read in conjunction with other Third Circuit precedent, requires the dismissal of Plaintiff's complaint at the pleadings stage. *Wetzel*, 139 F.3d at 383–84 ("The character of this inquiry is inherently fact-specific in that it requires a court to examine the nature of the responsibilities of the particular job at issue."). More information is needed to determine whether the termination of Burkley and his replacement by Avolio was lawful in this case. The question that must be answered is *general* rather than *specific*. *Branti*, 445 U.S. at 518 ("In sum, the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of

the public office involved."). Furthermore, the Defendants bear the burden to submit evidence that the position at issue is one for which political affiliation is an appropriate requirement. *Ballas v. City of Reading*, 153 F. Supp. 2d 691, 697 (E.D. Pa. 2001) (citing *Elrod*, 427 U.S. at 368)). Therefore, in this Court's view, the question of whether a given position fits within the *Elrod/Branti* exception could rarely be decided at the pleadings stage.

Moreover, the Court finds that Plaintiff's Amended Complaint includes sufficient allegations to make out a plausible claim that his right to association was violated. Specifically, Plaintiff asserts that political affiliation is not an appropriate requirement for the position of MAWC Solicitor. (Docket No. 9 at 2, ¶ 2(C)). Contrary to Defendants' arguments, (Docket No. 13 at 4), such averments do suffice to make a plausible claim for political patronage discrimination under *Galli*. *See, e.g.*, *Linskey v. Guariglia*, Civ. No. 3:11-2059, at *5 (M.D. Pa. Apr. 16, 2012) ("Plaintiff states a claim for politically motivated removal as he avers that political affiliation with the majority of the Pittston Area School Board is not necessary to perform the functions of an LIU Representative.").

## V. QUALIFIED IMMUNITY

As a final matter, the Court notes that the individual Defendants have not asserted qualified immunity as a defense at this stage. (Docket Nos. 10; 11; 13).[6] The Court expresses no opinion as to whether the individual defendants would be entitled to qualified immunity at this stage of the litigation, given that the defense has not been raised.

---

[6] Such immunity is an affirmative defense, *Crawford-El v. Britton*, 523 U.S. 574, 587 (1998). As the Court of Appeals for the Third Circuit has noted, qualified immunity questions should be resolved at the earliest stage possible in litigation. *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). However, "the burden of pleading qualified immunity rests with the defendant, not the plaintiff. Therefore, we conclude that a plaintiff has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds." *Id.* at 293.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint will be denied, without prejudice. An appropriate order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: January 8, 2014
cc/ecf: All counsel of record