IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH B. BURKLEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MUNICIPAL AUTHORITY OF ) <br> WESTMORELAND COUNTY, ) <br> CHARLES ANDERSON, R. TYLER ) <br> COURTNEY, A. KEITH STASO, ) <br> RANDY ROADMAN, JEROME ) <br> DEFABO, SR., BRUCE ROBINSON, ) <br> and ANTHONY BOMPIANI, ) <br> ) <br> Defendants. ) | Civil Action No. 13-1014 <br><br> Judge Nora Barry Fischer |

## **MEMORANDUM OPINION**

### I.  INTRODUCTION

Two motions are presently before this Court: the December 28, 2014 Motion for Partial Summary Judgment (ECF No. 39) filed by Kenneth B. Burkley ("Plaintiff"); and, the December 30, 2014 Motion for Summary Judgment (ECF No. 45) filed on behalf of the Municipal Authority of Westmoreland County ("MAWC"), Charles Anderson, R. Tyler Courtney, A. Keith Staso, Randy Roadman, Jerome DeFabo, Sr., Bruce Robinson, and Anthony Bompiani (*collectively*, "Defendants"). Both motions are filed pursuant to Federal Rule of Civil Procedure 56(a) and pertain to Plaintiff's October 4, 2013 Amended Complaint (ECF No. 9), wherein claims are asserted for alleged discriminatory termination in violation of 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United States Constitution. This Court exercises subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal

question) and 1343 (civil rights). For the following reasons, the parties' motions shall be DENIED.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The MAWC is an autonomous political subdivision organized pursuant to the Pennsylvania Municipal Authorities Act, 53 Pa. C.S. § 5601, *et seq.* (ECF Nos. 47 at 1 – 2; 49 at 1). The MAWC provides sewage treatment and water services to approximately 125,000 people in five counties. (ECF Nos. 47 at 1; 49 at 1). The MAWC is governed by a Board of Directors, the individual members of which are appointed by the Westmoreland County Commissioners. (ECF Nos. 47 at 2; 49 at 2). The Board of Directors is responsible for hiring the MAWC Solicitor. (ECF Nos. 47 at 2; 49 at 2). Plaintiff was hired by the Board of Directors to serve as Solicitor for the MAWC in 2002. (ECF Nos. 47 at 1; 49 at 1). Plaintiff's yearly salary as MAWC Solicitor was $120,000.00. (ECF Nos. 47 at 3; 49 at 4). Plaintiff was terminated as Solicitor in 2013, by the then Board of Directors comprised of members: A. Keith Staso, Bruce Robinson, Jerome DeFabo, Sr., Randy Roadman, and Anthony Bompiani. (ECF Nos. 47 at 2; 49 at 2). Throughout the time period relevant to the present case, RDM Management ("RDM") was employed by the Board of Directors to run the day-to-day operations of MAWC. (ECF Nos. 47 at 2; 49 at 1). Its President is Chris Kerr. (ECF Nos. 47 at 2; 49 at 1).

As Solicitor, Plaintiff regularly attended monthly meetings of the MAWC Board of Directors. (ECF Nos. 47 at 3; 49 at 4). As such, Plaintiff would present a monthly report, and answer legal questions posed by the Board of Directors. (ECF Nos. 47 at 4; 49 at 4 – 5). As Solicitor, he also attended private Executive Sessions of the Board of Directors, during which he would be privy to confidential discussions. (ECF Nos. 47 at 4; 49 at 5). Plaintiff also provided legal advice to RDM in furtherance of the MAWC's operations. (ECF Nos. 47 at 4; 49 at 5).

Outside of Board meetings, Plaintiff's primary contact with the MAWC was through Chris Kerr. (ECF No. 48-5 at 13, 19).

Plaintiff conducted legal research, and provided his legal advice and recommendations to the MAWC, as needed. (ECF Nos. 47 at 4; 49 at 5). His legal duties also included reviewing contracts and agreements, drafting legal documents, engaging in litigation of tax assessments, zoning, regulatory compliance, and small claims in state court, risk assessment, and participating in sales and acquisitions of property. (ECF Nos. 47 at 5 – 9; 49 at 5 – 11; 49-10 at 48, 52 – 54). Additionally, he provided legal services related to bond issues by the MAWC, for which he would receive additional compensation. (ECF Nos. 47 at 8; 49 at 10).

Plaintiff was an active member of the Democratic Party in Westmoreland County. (ECF Nos. 47 at 3; 49 at 3). Indeed, he supported two Democratic candidates for Westmoreland County Commissioner in the November 2011 election. (ECF No. 49-10 at 154). Two Republicans, R. Tyler Courtney ("Courtney") and Charles Anderson ("Anderson"), were ultimately elected that year. (ECF Nos. 47 at 3; 49 at 3; 49-10 at 155). Courtney and Anderson were largely responsible for the composition of the MAWC Board of Directors at the time of Plaintiff's termination. (ECF Nos. 47 at 2; 49 at 2).

Following Plaintiff's termination, he filed a Complaint in this Court on July 16, 2013. (ECF No. 1). An Amended Complaint followed on October 4, 2013. (ECF No. 9). Following the close of discovery, Plaintiff filed a Motion for Partial Summary Judgment (ECF No. 39) and accompanying brief (ECF No. 40) on December 28, 2014. Defendants filed their own Motion for Summary Judgment (ECF No. 45) and accompanying brief (ECF No. 46) on December 30, 2014. Responsive submissions were subsequently filed by both parties. (ECF Nos. 47 – 56, 58, 62, and 63). A hearing was held on March 18, 2015, at which time the Court heard argument on

the parties' respective summary judgment motions. (ECF No. 64). The Official Transcript (ECF No. 65) was filed on April 28, 2015. Defendants filed a supplemental brief (ECF No. 67) in support of their motion on June 9, 2015. Plaintiff filed his reply brief (ECF No. 68) on June 29, 2015. The matter is now fully briefed and ripe for disposition.

### III. STANDARD OF REVIEW

A grant of summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Heffernan v. City of Paterson*, 777 F. 3d 147, 151 (3d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). A genuine issue of material fact is one that could affect the outcome of litigation. *Mahoney v. McDonnell*, -- F. App'x --, 2015 WL 3875741 at *3 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine issues. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Id.* (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the Court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *Armbruster v. Unisys Corp.*, 32 F. 3d 768, 777 (3d Cir. 1994)). Further, the benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats*

4

*Co.*, 434 F. App'x 139, 141 n. 4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F. 3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Id.* (citing *Williams v. Borough of West Chester*, 891 F. 2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Connection Training Serv. v. City of Phila.*, 358 F. App'x 315, 318 (3d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 324).

IV. **DISCUSSION**

A. Political Patronage Discrimination

Both of the pending motions devote the majority of their discussion to the issue of political patronage, and the appropriateness of its application to Plaintiff while acting as Solicitor for the MAWC. Plaintiff's primary argument is that the MAWC Solicitor is not a "policymaker," and that political affiliation has no effect on the performance of the duties of the Solicitor of the MAWC; therefore, the termination of the Solicitor for political reasons is a violation of the First and Fourteenth Amendments. Defendants, on the other hand, hone in on the Solicitor's role as legal counsel, and the inherent right of the MAWC to demand absolute loyalty from its Solicitor – loyalty which Defendants contend may only be guaranteed by a particular political affiliation. While each of the above parties asserts entitlement to judgment as a matter of law based upon the facts obtained through discovery, this Court finds that the facts ultimately do not allow for resolution of Plaintiff's claims at the summary judgment stage.

The Supreme Court of the United States has recognized that political patronage is a quintessentially American institution; nevertheless, the Court has cautioned that "[t]o the victor

belong only those spoils that may be constitutionally obtained." *Galli v. New Jersey Meadowlands Comm'n*, 490 F. 3d 265, 270 (3d Cir. 2007) (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990)). "[A]n employee's exercise of First Amendment rights outweighs the government's interest in maintaining a system of political patronage." *Id.* (quoting *Stephens v. Kerrigan*, 122 F. 3d 171, 176 (3d Cir. 1997)). That said, the Supreme Court has also acknowledged that political loyalty may be a demonstrably necessary requirement for effective performance of certain "policymaking" positions. *Id.* (citing *Branti v. Finkel*, 445 U.S. 507 (1980); *Elrod v. Burns*, 427 U.S. 347 (1976)).

The Court of Appeals for the Third Circuit has established a test by which putative victims of political patronage discrimination may establish claims against government employers. To make out a *prima facie* case of said discrimination, a claimant must show that "(1) she was employed at a public agency in a position that does not require political affiliation, (2) she was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli*, 490 F. 3d at 271 (citing *Stephens*, 122 F. 3d at 176). As to the second and third prongs of the above test, sufficient evidence has been adduced to demonstrate – at a *prima facie* level – that Plaintiff's political persuasion and his support for Defendants Anderson and Courtney's Democratic rivals were constitutionally protected, and that such resulted in purported loss of confidence and desire to change direction that lead the Board of Directors to terminate Plaintiff's employment. (ECF Nos. 42-2 at 5 – 7; 42-3 at 5 – 6; 42-4 at 7; 42-6 at 8; 42-7 at 3 – 4; 42-8 at 3).

Thus, the conflict in the present case surrounds whether or not sufficient evidence was adduced to meet the requirements of the first prong: i.e., whether the position of Solicitor of the MAWC "required political affiliation." This necessitates a fact-specific inquiry into the nature

6

of the Solicitor's responsibilities. *Wetzel v. Tucker*, 139 F. 3d 380, 383 – 84 (3d Cir. 1998) (citing *Zold v. Twp. of Mantua*, 935 F. 2d 633, 635 (3d Cir. 1991)). To this end, the Third Circuit has counseled that courts not only look to the duties Plaintiff has performed, but more importantly, to those duties Plaintiff could be called upon to perform. *Tomalis v. Office of Attorney Gen. of the Commw. of Pa.*, 45 F. App'x 139, 143 (3d Cir. 2002) (citing *Wetzel*, 139 F. 3d at 383 – 84). Relevant factors include high salary, whether duties are "non-discretionary or non-technical," and the degree of participation in discussions and meetings, preparation of budgets, hiring and firing, and speaking in the name of policymakers. *Galli*, 490 F. 3d at 271. In addition, job descriptions and duties prescribed by law, while not dispositive, are "important and influential" factors in determining whether a position is properly subject to political patronage. *Zold*, 935 F. 2d at 640.

In arguing that Plaintiff cannot meet the first prong, Defendants place a great deal of significance on past findings by the Third Circuit that solicitors that rendered legal advice to administrative officials, drafted ordinances, negotiated contracts, and generally had involvement with issues of substantial importance to the community and intimately related to policy, were advisors from whom the hiring authority "ha[d] the right to receive…complete cooperation and loyalty…and should not [have been] expected to settle for less." *Wetzel*, 139 F. 3d at 385 – 86 (quoting *Ness v. Marshall*, 660 F. 2d 517, 522 (3d Cir. 1981)). The Court does not disagree with this contention, and finds that Plaintiff's conduct as Solicitor for the MAWC – in many ways – fits the above attributes deemed to bring a position within the *Branti/Elrod* exception.

Nonetheless, while "confidence *sometimes* may come only with the assurance that the Solicitor shares the same political ideology as the Board," *Wetzel*, 139 F. 3d at 386 (emphasis added), "loyalty and confidentiality…are needed for many working relationships." *Armour v.*

7

*Cnty. of Beaver*, 271 F. 3d 417, 432 (3d Cir. 2001) (citing *Burns v. Cnty. of Cambria*, 971 F. 2d 1015, 1023 (3d Cir. 1993)). "It has never been suggested that the need for loyalty and confidentiality alone supports politically motivated dismissals independent of the tasks which the employee must perform." *Id.* Moreover, the Third Circuit has held that even when there is a history of seeking "confidential and valuable advice…on pending policy decisions," a position is not necessarily "confidential" for purposes of the *Branti/Elrod* exception. *Zold*, 935 F. 2d at 639.

In reiterating the reasoning from *Branti*, the Third Circuit has made clear that "party affiliation is not necessarily relevant to every policymaking or confidential position." *Armour*, 271 F. 3d at 428 (citing *Branti*, 445 U.S. at 518). Indeed, "the ultimate inquiry is…whether the hiring authority can demonstrate that party affiliation is an appropriate *requirement* for the effective performance of the public office involved." *Boyle v. Cnty. of Allegheny*, 139 F. 3d 386, 395 (3d Cir. 1998) (citing *Branti*, 445 U.S. at 518) (emphasis added). A patronage dismissal must serve an "overriding" governmental interest of "vital importance," such that a particular political affiliation would be "highly likely to cause an official to be ineffective in carrying out the duties and responsibilities of the office." *Id.* at 396 (citing *Elrod*, 427 U.S at 362; *Branti*, 445 U.S at 515 – 16); *Armour*, 271 F. 3d at 428 – 29 (citing *Brown v. Trench*, 787 F. 2d 167, 168 (3d Cir. 1986)).

What distinguishes the present case from those frequently cited by Defendants is what distinguishes the *Boyle* case, generally: affirmative statements from "the relevant hiring authority to the effect that a particular political affiliation was not an appropriate requirement for the particular position." *Boyle*, 139 F. 3d at 394. Such a case is "out of the ordinary realm." *Id.* at 397. Presently, every member of the Board of Directors of the MAWC testified the following:

- Deposition of Anthony Bompiani (ECF No. 42-4 at 2):

    Q.  Is a certain political affiliation a job requirement for the solicitor for the Municipal Authority of Westmoreland County?

    A.  No, I don't believe so.

    Q.  As a board member, do you require a Republican [sic] solicitor?

    A.  Me? No. As a board member, no.

- Deposition of A. Keith Staso (ECF No. 42-5 at 3):

    Q.  So my question to you is, did you feel that the solicitor for the Municipal Authority of Westmoreland County needed a democrat or a republican solicitor for any reason?

    A.  I didn't think so.

    Q.  So you would admit that that position does not require any particular political affiliation?

    A.  Yes. That's how I answered.

- Deposition of Jerome DeFabo, Sr. (ECF No. 42-6 at 2):

    Q.  Do you believe that the solicitor for the Municipal Authority of Westmoreland County requires a certain political affiliation?

    A.  I would still say no.

    ***

    Q.  So it doesn't matter whether it's democrat or republican?

    A.  Correct.

- Deposition of Randy Roadman (ECF No. 42-7 at 5 – 6):

    Q.  So politics has no place in the making of policy in the Municipal Authority of Westmoreland County, correct?

    A.  I'm not sure. Particularly, no. No.

    ***

    Q.  Does the position of solicitor at the MAWC require any particular political affiliation?

9

A. I would say no.

- Deposition of Bruce Robinson (ECF No. 42-8 at 2):

Q. Okay. Do you agree that political affiliation is not a prerequisite for that position?

A. Yes.

The Third Circuit in *Boyle* quite plainly held that "[w]hen a majority of the Board – and thus, a majority of the 'hiring authority' – testifies that political affiliation is not an appropriate requirement for the position…it is difficult to see how this fact can be considered 'merely colorable or not significantly probative.'" *Boyle*, 139 F. 3d at 397. The "touchstone" of a political patronage analysis is that the "*hiring authority* [must] demonstrate that party affiliation is an appropriate requirement." *Id.* (quoting *Branti*, 445 U.S. at 518). The burden placed upon Defendants in such a case is a substantial one. *Id.* at 401.

While Third Circuit case law might otherwise allow this Court to infer that the position of Solicitor for the MAWC was properly subject to political patronage based upon Plaintiff's past duties and responsibilities, the testimony of the Board of Directors squarely contradicts Defendants' supposed need for a particular political affiliation.[1] "When…political entities themselves testify that political affiliation *is* or *should* not be an important consideration…such evidence, at the very least, creates a genuine issue of material fact precluding summary judgment." *Boyle*, 139 F. 3d at 401 (emphasis added). The Court "cannot see how [Defendants'] own statements relating directly on the issue can be considered anything less than probative." *Id*. Given the significance of the Board of Directors' statements, there is presently a

---

[1] Defendants Anderson and Courtney, County Commissioners without technical authority to terminate Plaintiff, further testified that political affiliation was not a consideration for MAWC Solicitor. (ECF Nos. 42-2 at 8; 42-3 at 8).

10

question of fact that must be reserved for trial. *Id.* at 397 – 99 (citing *Rosenthal v. Rizzo*, 555 F. 2d 390 (3d Cir. 1977)). As such, Defendants' motion for summary judgment as to the political patronage test will be denied.[2]

Likewise, Plaintiff's motion for partial summary judgment will also be denied. Viewing the evidence in the light most favorable to Defendants, Plaintiff's duties and responsibilities as Solicitor for the MAWC could be found to suggest that his position was one of confidence and trust, intimately related to policymaking, and therefore, subject to political patronage. The above notwithstanding, the Court finds that Plaintiff has advanced sufficient evidence to establish a *prima facie* case of discrimination based upon political affiliation. Resolution of the resultant factual conflict must be reserved for a jury. *Boyle*, 139 F. 3d at 401.

B. <u>Qualified Immunity</u>

Plaintiff seeks redress for his political patronage dismissal pursuant to 42 U.S.C. § 1983, which imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects…any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Nonetheless, as Defendants articulate in their motion, qualified immunity will protect government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*. 769 F. 3d 850, 858 (3d Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To determine whether qualified immunity applies to a particular claim, this Court must engage in a two pronged analysis to decide "(1) whether the plaintiff alleged sufficient facts to establish the violation of a

---

[2] Additionally, the lack of a statutory or other official description of the MAWC Solicitor's duties – another distinguishing feature of the present case – further muddies the issue.

11

constitutional right, and (2) whether the right was 'clearly established' at the time of the defendant's actions." *Id.*

As to political patronage and the *Branti/Elrod* exception, the Third Circuit has held that its prior case law has "*clearly established* to all state and municipal employers that firing or other adverse employment action for political reasons contravenes the Constitution unless defendants could show that the particular position came within the narrow exception." *Assaf v. Fields*, 178 F. 3d 170, 180 (3d Cir. 1999) (emphasis added). While this Court finds that Plaintiff advanced sufficient evidence to establish a *prima facie* case of discrimination, summary judgment is precluded because material facts are in dispute. For this same reason, and because it cannot be said, as a matter of law, that the position of Solicitor for the MAWC is one for which political affiliation is an appropriate requirement, the Court cannot find that Defendants are entitled to qualified immunity at this stage of the litigation. *Wren v. Cnty. of Luzerne*, 548 F. App'x 826, 828 (3d Cir. 2013); *Assaf*, 178 F. 3d at 181. Once again, of particular importance are the Board of Directors' and Commissioners' statements to the effect that political affiliation is *not* a requirement for the position of Solicitor. *Id.* Resolution of the conflict between this testimony and Plaintiff's alleged responsibilities and duties must be reserved for the trier of fact. *Boyle*, 139 F. 3d at 401. Defendants' request for summary judgment as to the issue of qualified immunity must, therefore, be denied.

### C. Conspiracy

Lastly, Defendants urge this Court to find that Defendants Anderson and Courtney are entitled to judgement as a matter of law, because as Commissioners of Westmoreland County, they lacked actual authority to hire or fire the Solicitor of the MAWC, and Plaintiff failed to allege facts sufficient to sustain a claim for conspiracy under 42 U.S.C. § 1983. The Court notes

that a conspiracy claim made pursuant to § 1983 requires "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Fouse v. Beaver Cnty.*, 2015 WL 1967242 at * 11 (W.D. Pa. May 1, 2015) (quoting *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)). "Simply put, no conspiracy to violate a plaintiff's rights can exist unless there is some actual violation of those rights." *Id.* (citing *White v. Brown*, 408 F. App'x 595, 599 (3d Cir. 2010)). Additionally, a conspiracy claim requires more than mere speculation as to an agreement; Plaintiff must provide specific facts establishing the time of the agreement, the parties thereto, the period of the agreement, and the object of the agreement. *Id.* (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F. 3d 159, 178 – 79 (3d Cir. 2010)).

The record testimony generally indicates that Plaintiff lost the confidence of the board, and was ultimately terminated, because of his participation in the November 2011 election campaigns of Anderson and Courtney's Democratic rivals. (ECF Nos. 42-2 at 9; 42-3 at 5 – 6; 42-4 at 7, 9 – 10; 42-6 at 7; 42-7 at 3; 42-8 at 3). He was terminated shortly after Anderson and Courtney's election and after the Board of Directors took its current form. However, the evidence that there was pressure from Anderson and Courtney upon the Board of Directors to terminate Plaintiff, or that there was an agreement between the Commissioners and Board of Directors to do so, is much less robust. The only affirmative statements indicating that the Commissioners contacted the Board of Directors to demand Plaintiff's termination came through the testimony of Plaintiff and Randy Roadman. (ECF No. 42-7 at 7 – 15, 17). Nevertheless, even a plaintiff's testimony, standing alone, may defeat summary judgment if it contains sufficient allegations of specific facts. *Bailey v. Reading Hous. Auth.*, 187 F. App'x 148, 149 (3d

13

Cir. 2006) (citing *Levendos v. Stern Entm't, Inc.*, 860 F. 2d 1227, 1231 (3d Cir. 1988); *Jackson v. Univ. of Pittsburgh*, 826 F. 2d 230, 236 (3d Cir. 1987)).

Roadman testified at length that several discussions were held between him and Anderson, and Anderson's staff, regarding a desire to replace Plaintiff, and that a meeting was held with multiple members of the board related to replacing Plaintiff. (ECF No. 42-7 at 7 – 15, 17). When added to Plaintiff's testimony regarding the nature of his termination, Roadman's testimony creates a question of fact as to what the Defendants knew and/or agreed to with respect to Plaintiff's termination, particularly in light of various Defendants' denials of prior discussions or agreements regarding replacing Plaintiff as Solicitor for the MAWC. Given this discrepancy in testimony, credibility issues exist. Such issues are not amenable to disposition at summary judgment. *Bailey*, 184 F. App'x at 149; *Jackson*, 826 F. 2d at 236. As such, Defendants' motion, as it pertains to Plaintiff's conspiracy claim, must be denied.

V. **CONCLUSION**

Based upon the foregoing, Plaintiff has adduced sufficient evidence to establish a *prima facie* case of discrimination in violation of 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United States Constitution. Further, significant questions of material fact and credibility preclude judgment as a matter of law in favor of either Plaintiff or Defendants. Accordingly, Plaintiff's Motion for Partial Summary Judgment (ECF No. 39) is denied, and Defendants' Motion for Summary Judgment (ECF No. 45) is denied.

Appropriate Orders follow.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: August 17, 2015
cc/ecf: All counsel of record.